Jeffrey Shafto, Esq. (Bar No.: 004700)
**LAW OFFICE OF JEFFREY SHAFTO, LLC**
145 Newbury Street
Portland, ME 04101
T: 207-619-4006
E: jshafto@shaftolaw.com

*Attorneys for Plaintiffs,*
*Claudia and Donald Peet*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| CLAUDIA AND DONALD PEET,<br><br>Plaintiffs,<br><br>v.<br><br>NISSAN MOTOR ACCEPTANCE CORPORATION LLC; TRANS UNION LLC; EQUIFAX INFORMATION SERVICES, LLC; and EXPERIAN INFORMATION SOLUTIONS, INC.<br><br>Defendants. | Case No.<br><br>**Plaintiffs' Complaint AND DEMAND FOR JURY TRIAL**<br><br>1. FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 *et seq.* |

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiffs Claudia and Donald Peet ("Plaintiffs"), by and through their attorneys, alleges the following against Defendants Nissan Motor Acceptance Corporation ("Nissan"), Equifax Information Services, LLC ("Equifax"),

Experian Information Solutions, Inc. ("Experian"), and Trans Union LLC ("Trans Union"), collectively ("Defendants").

## INTRODUCTION

1.     Counts I and II of Plaintiffs' Complaint are based upon the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. The FCRA is a federal statute that broadly regulates the credit reporting agencies and furnishers of credit information. Among other things, the FCRA prohibits credit reporting agencies and furnishers from reporting incomplete or inaccurate information on a consumer's credit report.

2.     Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## JURISDICTION AND VENUE

3.     The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681.

4.     Supplemental jurisdiction of this court arises under 28 U.S.C. § 1367 because the state law claims are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the US Constitution.

5.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

6.     Defendants transact business here; therefore, personal jurisdiction is established.

## PARTIES

7.     Plaintiffs are natural persons residing in Wells, Maine.

8.     Plaintiffs are "consumer(s)" as defined by 15 U.S.C. § 1681a(c).

9.     Defendant Nissan is a company that provides financing, leasing and protection plans, in addition to providing other financial services to authorized Nissan dealers, affiliate and their customers. Defendant Nissan's principal office is located at One Nissan Way, Franklin, TN 37067. Nissan can be served through its agent for service of process, Corporation Service Company, located at 2908 Poston Ave., Nashville, TN 37203.

10.     Defendant Equifax is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax can be through its agent for

- 3 -
COMPLAINT AND DEMAND FOR JURY TRIAL

service of process, 1505 Corporation The Prentice-Hall Corporation System, Inc., located at 2710 gateway Oak Drive Ste 150N, Sacramento, CA 95833.

11.     Defendant Experian is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Experian principal place of business located at 475 Anton Boulevard, Costa Mesa, California, 92626. Experian can be served at its agent for service of process, 330 N Brand Blvd. Suite 700, Glendale, CA

12.     Defendant Trans Union LLC is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, IL. Trans Union can be served through its registered agent, CSC – Lawyers incorporating Service, located at 2710 Gateway Oaks Drive, Sacramento, CA.

13.     Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

**FACTUAL ALLEGATIONS**
*Background Information*

14.    Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

15.    While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

16.    Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

17.    Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

18.     Information is "inaccurate" under the FCRA not only when it is factually incorrect, but also when it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.

19.     The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

20.     Equifax, Experian and Trans Union, the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publishes and distributes credit information about Plaintiffs and other consumers through the sale of consumer reports.

21.     The CRA Defendants consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv)

- 6 -
COMPLAINT AND DEMAND FOR JURY TRIAL

Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

22.     The CRA Defendants obtain consumer information from various sources. Some consumer information is sent directly to the CRAs by furnishers, and other information is independently gathered by CRAs from third party providers, vendors, or repositories, like computerized reporting services like PACER and Lexis-Nexis.

23.     The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

24.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the CRA Defendant's consumer reports.

25.     The information Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

COMPLAINT AND DEMAND FOR JURY TRIAL

26.     FICO Scores are calculated using information contained in the CRA Defendant's consumer reports.

27.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

28.     FICO Scores factor in the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

  a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

  b. The "amount of debt" a consumer owes has a major impact on their credit score.

29.     Lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

- 8 -
COMPLAINT AND DEMAND FOR JURY TRIAL

30.     DTI compares the total amount a consumer owes to the total amount a consumer earns.

31.     A consumer's income, however, is not included in their consumer report; only their amount of debt is.

32.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest and lower credit limits).

*Allegations Specific to Credit Reporting*

33.     In or around October 2023, Plaintiffs entered into a retail installment contract for the purchase of a Nissan vehicle which was subsequently assigned to and funded by Defendant Nissan (account #XXXXXX4237 or the "Nissan Account").

34.     Plaintiffs scheduled their monthly car payments to be paid through their personal credit union via Bill Pay on the 1st of each month.

35.     Plaintiffs' automatic Bill-pay was in an amount that was in excess of the monthly payment and was always set to be paid at a time earlier than the due date each month.

36.     Plaintiffs' payments were current and in good standing through May 2025.

COMPLAINT AND DEMAND FOR JURY TRIAL

37.    In or around May 2025, Defendant Nissan changed the account number for all its customer accounts.

38.    Plaintiffs were never provided written, electronic, or any other form of notice regarding the account number change.

39.    As a result of the account number change, Plaintiffs' June 2025 Bill Pay payment did not properly process to the Nissan Account.

40.    Plaintiffs were unaware that the June 2025 payment had not posted because the payment showed as pending while Plaintiffs were on vacation and off the grid (i.e., no internet or phone connectivity).

41.    On or about July 22, 2025, Plaintiffs returned from their off-the-grid vacation and noticed that the June 2025 payment did not clear their bank account.

42.    On the same day of their return, Plaintiffs attempted to contact Nissan but could not get a hold of a representative because of the long wait times.

43.    On or about July 25, 2025, Plaintiffs contacted Defendant Nissan by phone to inquire about the payment issue.

44.    During the July 25, 2025 phone call, Defendant Nissan informed Plaintiffs that it had changed all customer account numbers which caused widespread payments issues for customers.

COMPLAINT AND DEMAND FOR JURY TRIAL

45. Frustrated with Defendant Nissan's actions regarding the change in account numbers without notification, Plaintiffs wanted to pay off the entire remaining balance on the Nissan Account during the phone call.

46. However, Defendant Nissan informed her that it could not accept payments larger than $6,000 by phone and directed them to complete the payoff online.

47. Subsequently, Plaintiffs paid off the Nissan Account in full online.

48. Defendant Nissan confirmed that it received and processed the full payoff of the Nissan Account.

49. Plaintiffs do not owe any amount of money related to the Nissan Account.

50. Upon information and belief, Defendant Nissan failed to provide adequate notice of the account number change to many of its customers, including Plaintiffs.

51. Upon information and belief, Nissan was aware, or reasonably should have been ware, that numerous customers experienced payment issues after the account number change, including payments failing to process or being misapplied.

52. Upon information and belief, Nissan received complaints, either directly or indirectly, regarding payment problems that arose after Nissan changed customer account numbers.

53. In or around August 2025, Plaintiffs learned that their credit scores had dropped by approximately 100 points because of a delinquency associated with the Nissan account.

54. Plaintiffs contacted Defendant Nissan regarding the delinquency that was reported and Defendant Nissan stated Plaintiffs needed to send in a letter to its Credit Bureau Management.

55. During the same call, the representative stated that at Nissan "the right hand does not know what the left hand is doing when it comes to loans."

56. On or about August 25, 2025, Plaintiffs sent a detailed dispute letter to Defendant Nissan, Kevin Cullum (President of Defendant Nissan), Andre Medeiros (Vice President of Defendant Nissan), and the Defendant credit reporting agencies regarding the account and reporting issues.

57. Upon information and belief, Defendant Nissan received Plaintiffs' dispute on or about August 30, 2025.

58. In response to the Plaintiffs' dispute, Defendant Nissan refused to update the reporting and remove the delinquency.

59. Sometime in or around August 2025, Plaintiffs obtained copies of their credit reports from Defendants Equifax, Experian, and Trans Union (collectively, the "Defendant CRAs").

60.     Upon obtaining her credit reports, Plaintiffs learned that the Defendant CRAs were reporting the Nissan Account as delinquent and/or past due for the month of July 2025.

61.     The information being reported was inaccurate and/or misleading because it gives the impression that Plaintiffs failed to make timely payment, when in reality Defendant Nissan's own conduct – changing the account number without notifying Plaintiffs – prevented Plaintiffs' automatic payment from being processed.

62.     At all relevant times, Plaintiffs took reasonable steps to ensure timely payment through automatic bill pay, including consistently making each payment on time and in an amount equal to or greater than the amount due.

63.     At all relevant times, Plaintiffs had a consistent history of making their payments on time and in full. As such, the reporting by Defendant Nissan creates the materially misleading impression that Plaintiffs were unable or unwilling to make their payments when due, when in fact Plaintiffs had always been responsible and reliable borrowers.

### *Plaintiffs' Dispute Letters*

64.     In or around September 2025, Plaintiffs sent a dispute letter regarding the Nissan Account to Defendants Equifax, Experian, and Trans Union.

- 13 -
COMPLAINT AND DEMAND FOR JURY TRIAL

65. In the disputes, Plaintiffs explained the circumstances regarding the delinquent reporting, including that Nissan changed the account numbers without notifying Plaintiffs that a change had occurred.

66. Upon information and belief, the Defendant CRAs received Plaintiffs' disputes.

67. Upon information and belief, the Defendant CRAs forwarded Plaintiffs' disputes to Defendant Nissan as required under 15 U.S.C. § 1681i(a)(2).

68. Upon information and belief, the Defendant CRAs failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681i.

### *Plaintiffs' Dispute Results*

69. In or around October 2025, Defendant Equifax, Experian and Trans Union sent Plaintiffs their dispute results.

70. The dispute results indicated that the information regarding the Nissan Account was verified as accurate and continued to report the Plaintiffs as having been delinquent.

71. Upon information and belief, the CRAs did not review Plaintiffs dispute letters in full, along with the supporting documentation that was sent.

72. Instead, upon information and belief, the Defendant CRAs merely forwarded the dispute in the form of an Automated Consumer Dispute Verification

form with a dispute code to Defendant Nissan and accepted what it was told by Nissan.

73.     Despite this knowledge, Defendant CRAs failed to conduct a reasonable reinvestigation of Plaintiffs' dispute and instead simply accepted Defendant Nissan's verification of the disputed information.

74.     As such, the Defendant CRAs continued to report the Nissan Account inaccurately and in a manner that suppressed Plaintiffs' credit score.

75.     Upon information and belief, Defendant Nissan failed to conduct a reasonable investigation and continued to verify inaccurate and/or misleading information regarding the Nissan Account in response to the Defendant CRA's ACDVs, in violation of 15 U.S.C. § 1681s-2(b).

### *Damage Due to Inaccurate Credit Reporting*

73.     Defendants' inaccurate reporting caused Plaintiffs' credit score to significantly decrease by approximately 100 points.

74.     Further, Defendants' inaccurate reporting caused Plaintiffs' credit worthiness to suffer.

75.     The inaccurate credit reporting has caused Plaintiffs to suffer from emotional distress and mental pain and anguish, including but not limited to, stress, anxiety, frustration, embarrassment, sleepless nights, and confusion.

76. The inaccurate credit reporting has caused Plaintiffs to incur out of pocket costs in disputing the inaccurate information.

77. Defendants failed to conduct a reasonable investigation as required under the FCRA.

78. As a result of Defendants' conduct, Plaintiffs has sustained and continues to sustain actual damages.

79. The deprivation of Plaintiffs' rights will be redressed by favorable decision herein.

## COUNT I
### Defendants Equifax, Experian, and Trans Union
### (Violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*

33. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

34. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

35. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

36.     The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

37.     The FCRA requires credit reporting agencies, like Trans Union, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

38.     Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to the Nissan Account.

39.     Consequently, Defendants routinely report inaccurate, and materially misleading information about Plaintiffs, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendants possess information inconsistent with the reported information and possess information establishing that the reported information is in fact inaccurate.

40.     Defendants knew or should have known of their obligations under the FCRA. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and

in prior cases involving Defendant from which Defendant is on notice of their unreasonable procedures.

41.    Defendants Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681(e)(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiffs' credit reports and credit files they published and maintained concerning the Plaintiffs.

42.    Even after Plaintiffs notified Defendants Equifax, Experian and Trans Union of the inaccurate information, the credit reporting agencies continued to inaccurately report the Nissan Account.

43.    When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information or delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

44.    When conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

45.    Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to

COMPLAINT AND DEMAND FOR JURY TRIAL

"include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

46. Defendants' violations of 15 U.S.C. § 1681i include, but are not limited to the following:

> i. Failing to reasonably reinvestigate the inaccurate information Plaintiffs disputed.
>
> ii. Failing to consider all relevant information while investigating Plaintiffs' dispute.
>
> iii. Failing to include all relevant information when notifying Nissan of Plaintiffs' dispute.

47. Instead of reasonably reinvestigating Plaintiffs' dispute, Defendants "verified" the tradelines were accurate and continued to report the Nissan account with a delinquent payment history.

48. Defendants' acts, as described above, were done willfully and knowingly.

49. Alternatively, Defendant was negligent, entitling Plaintiffs to recover damages pursuant to 15 U.S.C. § 1681o.

50. Defendants Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether

COMPLAINT AND DEMAND FOR JURY TRIAL

the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiffs' credit report.

51.   Defendants Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiffs' credit file or correct the inaccurate information upon reinvestigation.

52.   As a result of Defendants' Equifax, Experian, and Trans Union's violations of 15 U.S.C. § 1681, Plaintiffs suffered actual damages which have been further described above.

53.   Defendants Equifax, Experian, and Trans Union's violations were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

54.   In the alternative, Defendants Equifax, Experian, and Trans Union were negligent, which entitles Plaintiffs to recovery under 15 U.S.C. § 1681o.

55.   Plaintiffs are entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § § 1681n and 1681o.

## COUNT II
**Defendant Nissan**
**(Violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.***

56. Plaintiffs incorporate by reference all the above paragraphs of this Complaint as though fully stated herein.

57. On at least one occasion within the past two years, by example only and without limitations, Defendant Nissan violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate the Plaintiffs' disputes.

58. The FCRA requires a furnisher, such as Nissan, after receiving notice from a credit report agency that a consumer disputes information that is being reported by that furnisher to conduct an investigation with respect to the dispute information, to review all relevant information, to report the results of the investigation to the credit reporting agency, and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

59. Plaintiffs notified the Defendant CRAs that the delinquency associated with the Nissan Account was inaccurate and/or misleading. Thereafter, the Defendant credit reporting agencies notified Defendant Nissan that Plaintiffs was disputing the information it had furnished to the credit reporting agency and forwarded the dispute to Nissan.

60. The information furnished by Nissan was inaccurate under the FCRA because it was misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.

61.     Specifically, Nissan reported Plaintiffs as delinquent while omitting the material fact that it had changed the account number without notice, which caused Plaintiffs' automatic payment to fail, despite Plaintiffs' established practice of making timely payments in amounts equal to or greater than the amount due. As such, the reporting created a materially misleading impression that Plaintiffs were responsible for the alleged delinquency, when in fact it was caused by Nissan's own conduct, resulting in harm to Plaintiffs' credit score and creditworthiness.

62.     Nissan is liable under sections 1681n and 1681o of the FCRA by engaging in the following conduct that violates 15 U.S.C. § 1681s-2(B):

    a.   Willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiffs disputed.

    b.   Willfully and negligently failing to review all relevant information concerning Plaintiffs' Nissan Account.

    c.   Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

    d.   Willfully and negligently failing to report accurate information to all credit reporting agencies;

    e.   Willfully and negligently failing to properly participate, investigate and comply with the investigations that were conducted by any and all

credit reporting agencies concerning the inaccurate information disputed by Plaintiffs.

   f. Willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning Plaintiffs to the credit reporting agencies; and

   g. Willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b).

63. Nissan is liable to compensate Plaintiffs for the full amount of statutory, actual and punitive damages, along with attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## **PRAYER OF RELIEF**

**WHEREFORE**, Plaintiffs Claudia and Donald Peet, respectfully request judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendants violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. § 1681n(a) and 15 U.S.C. § 1681o(a)(1);

C. Statutory damages pursuant to 15 U.S.C. §1681n(a)(1)(A);

D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

COMPLAINT AND DEMAND FOR JURY TRIAL

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Awarding Plaintiffs any pre-judgment and post judgment interest as may be allowed under the law; and

G. Any other relief that this Court may deems appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs demands a trial by jury in this action.

Respectfully submitted this 2nd day of April 2026.

By: */s/ Jeffrey Shafto*
Jeffrey Shafto, Esq. (Bar No.: 004700)
**LAW OFFICE OF JEFFREY SHAFTO, LLC**
145 Newbury Street
Portland, ME
T: 207-619-4006
E: jshafto@shaftolaw.com

*Attorneys for Plaintiffs,*
*Claudia and Donald Peet*